**Rodney D. WILLIAMS, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.**

No. 86–2332.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1987.

Decided Nov. 17, 1988.

Bobby Ray McDaniel, Jonesboro, Ark., for appellant.

Jack Gillean, Little Rock, Ark., for appellee.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Rodney D. Williams appeals the District Court's [1] dismissal of his petition for a writ of habeas corpus. Williams contends, among other things, that his prior habeas petition was filed without his knowledge and authority, and therefore that the District Court erred in dismissing his present petition as an abuse of the writ.

### I.

Williams was convicted by a jury of first degree murder and aggravated robbery in Arkansas state court in 1981 and sentenced to life imprisonment. His convictions were affirmed by the Arkansas Supreme Court. *Williams v. State*, 281 Ark. 91, 663 S.W.2d 700 (1983), *supplemental opinion issued on denial of rehearing*, 281 Ark. 97, 663 S.W.2d 703, *cert. denied*, 469 U.S. 980, 105 S.Ct. 382, 83 L.Ed.2d 317 (1984).

In 1985, Williams's trial attorney, Larry P. Vaught, filed a petition for a writ of habeas corpus on Williams's behalf in the United States District Court for the Eastern District of Arkansas. This petition alleged that Williams's convictions were obtained by the use of a coerced confession and by the improper use of evidence of other crimes. After an extensive examination of Petitioner's claims, the District Court [2] dismissed the petition without an evidentiary hearing. *Williams v. Lock-*

*hart*, No. PB–C–85–280 (E.D.Ark. Aug. 30, 1985).

Thereafter, Williams filed his first application for post-conviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure in the Arkansas Supreme Court. This petition was denied in an unpublished opinion, *Williams v. State*, No. CR 83–94 (Ark.Sup.Ct. Jan. 13, 1986) [1986 WL 1464] (per curiam), and Williams's subsequent attempt to file a second Rule 37 petition was also denied.

In 1986 Williams, acting pro se, filed the present habeas petition in the District Court. He asserts nine grounds for relief,[3] only one of which was asserted in the prior petition. The other eight grounds are "new," in the sense that they were not raised in the prior petition. The District Court dismissed the petition on the basis of Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Applying the guidelines for successive petitions set forth in *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), the District Court found that Williams's first ground for relief had been decided on the merits in the previous habeas proceeding. Then, relying on the "ends of justice" analysis developed in *Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (plurality), the District Court found that Williams had not asserted a colorable claim of factual innocence, and thus dismissed the repetitive claim.

As to the other eight grounds, the District Court found that seven of the "new" grounds constituted an abuse of the writ because they concerned matters known by Williams at the time his first petition was

---

**1.** The Honorable Elsijane T. Roy, United States District Judge for the Eastern District of Arkansas.

**2.** The Honorable William R. Overton, late United States District Judge for the Eastern District of Arkansas.

**3.** The nine grounds asserted by Williams are (1) his conviction was obtained by use of evidence of another offense; (2) his conviction was imposed in violation of the Arkansas Habitual Of-

fender Act; (3) he was denied assistance of counsel at a post-indictment line-up; (4) the trial court erred in failing to give a lesser-included-offense instruction; (5) the evidence was insufficient to support his conviction; (6) bullet fragments were erroneously admitted into evidence; (7) the State failed to corroborate his confession; (8) he was prevented from receiving a fair and impartial jury trial; and (9) his trial counsel was wholly ineffective.

filed.[4] The District Court reasoned that because Williams received legal assistance in his first application, he is charged with the awareness his counsel possessed as to the new grounds, and therefore failure to include them in the first application constituted an abuse of the writ.

Williams appeals, raising two issues. First, he argues that the dismissal of the repetitive claim was improper because the District Court erred by applying the *Kuhlmann* "ends of justice" standard. Second, Williams argues that because his first petition was filed without his knowledge or participation, the District Court incorrectly dismissed the seven "new" claims as an abuse of the writ. For the reasons set forth below, we affirm the dismissal of the repetitive claim, and remand for further proceedings as to the seven "new" claims.

## II.

■ We turn first to the District Court's dismissal of the repetitive claim. A federal district court is not required to entertain a repetitive petition for a writ of habeas corpus that presents no new grounds for relief. Under 28 U.S.C. § 2244(b), "a subsequent application for a writ of habeas corpus ... need not be entertained by a [federal court] unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ...." Likewise, Rule 9(b) of the Federal Habeas Rules provides that "[a] second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits...."

Rule 9(b) and section 2244(b) effectively codify the criteria established by the Supreme Court in *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), for the regulation of successive petitions.[5] These guidelines were summarized by the Court:

> Controlling weight may be given to denial of a prior application for federal habeas corpus or § 2255 relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

*Id.* at 15, 83 S.Ct. at 1077 (footnote omitted). The *Sanders* analysis requires that all three of the enumerated factors be satisfied before relitigation of the previously rejected claim may be barred.

We conclude that the first two *Sanders* conditions are satisfied. A review of the record shows that the first ground in Williams's second petition, that his conviction was obtained by use of evidence of another offense, was previously determined adversely to Williams and this determination was on the merits. Remaining is the question whether the "ends of justice" would be served by relitigating this ground.

At the outset, we note that *Sanders* instructs us that "the burden is on the applicant to show that, although the ground of the new application was determined against him on the merits on a prior application, the ends of justice would be served by a redetermination of the ground." *Sanders,* 373 U.S. at 17, 83 S.Ct. at 1078. In *Sanders,* the Supreme Court delineated some of the considerations to be weighed in determining whether the "ends of justice" would be served by redetermining a prior ground:

> If factual issues are involved, the applicant is entitled to a new hearing upon

---

**4.** Williams's other "new" ground, that his trial counsel was wholly ineffective, was addressed by the District Court because "[q]uite obviously, the petitioner should not, and will not, be charged with the failure to raise this ground in his first petition because counsel would not attempt to challenge his own competency in a habeas proceeding." *Williams v. Lockhart,* No. PB–C–86–200, slip op. at 11 (E.D.Ark. Aug. 20, 1986). The District Court decided this claim

adversely to the Petitioner. Williams does not appeal this aspect of the Court's decision.

**5.** The guidelines established in *Sanders* are fully applicable to habeas applications by state prisoners. *See Sanders,* 373 U.S. at 14, 83 S.Ct. at 1076; 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4267, at 684 (1978).

showing that the evidentiary hearing on the prior application was not full and fair.... If purely legal questions are involved, the applicant may be entitled to a new hearing upon showing an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior application.

*Sanders,* 373 U.S. at 16–17, 83 S.Ct. at 1078. "Something more than mere disagreement [with the previous habeas court] must be shown to justify a successive habeas petition." *Walker v. Lockhart,* 726 F.2d 1238, 1250 (8th Cir.1984) (en banc) (Arnold, J., concurring), *cert. dismissed,* 468 U.S. 1222, 105 S.Ct. 17, 82 L.Ed.2d 912; *mandate recalled* June 13, 1984; *see also Walker v. Lockhart,* 763 F.2d 942, 947 (8th Cir.1985) (en banc) (same case), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3332, 92 L.Ed.2d 738 (1986).

In *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986), the Supreme Court reexamined the standards governing habeas petitions raising grounds already decided on a prior petition. A four-justice plurality of the Court concluded that the "ends of justice" test mandates consideration of successive petitions only when the petitioner "supplements his constitutional claim with a colorable showing of factual innocence." *Id.* at 454, 106 S.Ct. at 2627. Three other justices expressed the view that a colorable claim of factual innocence is not essential to establish that the "ends of justice" warrant reconsideration of a petitioner's previously decided claim. *Id.* at 461, 106 S.Ct. at 2631 (Brennan, J., joined by Marshall, J., dissenting); *id.* at 476, 106 S.Ct. at 2639 (Stevens, J., dissenting).[6] The two remaining justices, Justices Blackmun and White, concurred in the Court's alternative holding, *id.* at 438,

106 S.Ct. at 2616, rejecting petitioner's successive claim on the merits, and expressed no view on the need for a colorable claim of factual innocence in a repetitive habeas petition.

▇ In the present case, we need not decide whether a colorable claim of factual innocence is essential to justify consideration of a successive habeas petition raising claims already rejected on their merits in a prior application. Williams's repetitive claim should not be revisited because he does not present any new facts or legal developments warranting relitigation of the claim, and therefore he fails to meet the minimum burden of the *Sanders* "ends of justice" analysis.

There is no new evidence, unrevealed at the time of the first habeas proceeding. There is no change in the law. There is of course no claim of taint in the first post-conviction proceeding. There is simply the claim that the [first habeas court] misapplied the law to the facts. I know of no case that grants a successive habeas petition in that situation.

*Walker,* 726 F.2d at 1250 (Arnold, J., concurring). In Williams's petition to the District Court, and in his argument to this Court, he merely states his disagreement with the first habeas court's determination that evidence of another crime was properly admitted. Williams does not argue that the first habeas court's adjudication of this claim was tainted. He does not argue that new facts or legal developments warranting relitigation exist. He merely argues that his conviction was tarnished by the use of evidence of other crimes. Because Williams has failed to meet his burden of showing that the "ends of justice" require revisiting the claim under the *Sanders* standard, it follows that he also failed to meet the heavier burden of *Kuhlmann,*

---

**6.** Justice Stevens expressed his belief that a colorable showing of factual innocence does have a legitimate place in the "ends of justice" analysis, but was unwilling to join the plurality in requiring it. Justice Stevens concluded that in determining "whether the 'ends of justice' would be served ... one of the facts that may properly be considered is whether the petitioner has advanced a 'colorable claim of innocence.' But ... this is not an essential element of every

just disposition of a successive petition." *Kuhlmann,* 477 U.S. at 476, 106 S.Ct. at 2639, (Stevens, J., dissenting). The common ground of the plurality opinion and Justice Stevens's dissent is that courts *may* consider whether there is a colorable claim of factual innocence when presented with a successive petition containing claims previously rejected on the merits. *See generally Jones v. Henderson,* 809 F.2d 946 (2nd Cir.1987).

which imposes the additional burden of supplementing the habeas claim with a "colorable showing of factual innocence," and therefore, the District Court's dismissal of this claim was proper.[7]

### III.

Williams contends that the District Court improperly dismissed seven of the "new" grounds in his present petition as an abuse of the writ. Under 28 U.S.C. § 2244(b), "a subsequent application for a writ of habeas corpus ... need not be entertained by a [federal court] ... unless the court ... is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ." Rule 9(b) is to the same effect. The Supreme Court in *Sanders* stated:

> if a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings rather than one or for some other such reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground.... Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay.

373 U.S. at 18, 83 S.Ct. at 1078; *see generally Ellis v. Mabry*, 601 F.2d 363, 364–65 (8th Cir.1979).

The burden is on the government to allege abuse of the writ. *Sanders*, 373 U.S. at 17, 83 S.Ct. at 1078. Once the government has met this initial burden, the petitioner "has the burden of answering that allegation and of proving that he has not abused the writ." *Price v. Johnston*, 334 U.S. 266, 292, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1948).

The habeas petitioner may meet his burden by showing that the claim asserted for the first time in his successive petition is based on facts or legal theories of which he had no knowledge when prosecuting his prior habeas petition. But when a petitioner was represented by competent counsel in a fully prosecuted petition, he cannot justify the omission of claims by asserting personal ignorance, because awareness of his potential claims is chargeable to his competent counsel and, therefore, to the petitioner. *Jones v. Estelle*, 722 F.2d 159, 167 (5th Cir.1983) (en banc), *cert. denied*, 466 U.S. 976, 104 S.Ct. 2356, 80 L.Ed.2d 829 (1984).

The primary responsibility for deciding whether a successive petition should be entertained is with the district courts:

> The principles governing ... denial of a hearing on a successive application are addressed to the sound discretion of the federal trial judges. Theirs is the major responsibility for the just and sound administration of the federal collateral remedies, and theirs must be the judgment as to whether a second or successive application shall be denied without consideration of the merits.

*Sanders*, 373 U.S. at 18, 83 S.Ct. at 1079. Therefore, in reviewing the District Court's dismissal of the seven "new" grounds without an evidentiary hearing, our standard of review is whether the District Court has abused its discretion. *Walker*, 763 F.2d at 954–55 n. 24.

Williams does not dispute that his trial attorney filed and litigated to final judgment a prior habeas petition, and that in so doing the attorney purported to be acting as Williams's counsel. Rather, Williams now contends that the attorney acted without Williams's "knowledge and participation."[8] Perhaps because this contention

---

**7.** Because Williams has not met the *Sanders* "ends of justice" criteria with respect to this claim, we find it unnecessary to address his contention that he should be afforded an evidentiary hearing in order to meet the additional *Kuhlmann* "colorable showing of factual innocence" factor.

**8.** This position was clearly stated by Williams's present attorney in oral argument to this Court. We note that Williams's position in the District Court was somewhat more ambiguous. There Williams stated:

> Counsel in the first habeas had been appointed by the state, not retained, to defend the Petitioner at trial and on the state appeal. Once the state appeal was affirmed, by state

was not raised with sufficient clarity, the District Court did not address it. Apparently assuming that there was no question concerning the attorney's authority to act for Williams, the court held that the "new" claims were barred as an abuse of the writ because Williams's prior application had been filed by competent counsel. Relying on the Fifth Circuit's decision in *Jones v. Estelle*, the District Court held that Williams must be charged with the awareness his counsel possessed as to the "new" grounds.

■ We agree with Williams that it would be unfair to dismiss his "new" claims because they were not included in the prior habeas petition if the previous petition was filed and litigated without his knowledge, participation, or authorization.[9] "The concept of 'abuse of the writ' is founded on the equitable nature of habeas corpus." *Kuhlmann*, 477 U.S. at 444 n. 6, 106 S.Ct. at 2622 n. 6.[10] Rule 9(b) is targeted at those writs that constitute "needless piecemeal litigation," or whose purpose is to "vex, harass, or delay." *Sanders*, 373 U.S. at 18, 83 S.Ct. at 1078. Although Rule 9(b) is an important tool allowing federal courts to weed out later applications containing claims that have been deliberately withheld from earlier applications, the rule cannot reach so far as to bar a new application filed by a petitioner who did not in fact consent, either expressly or by implication,

to the previous habeas petition filed by his trial counsel.

■ Accordingly, we remand this case and direct the District Court to determine whether the "new" claims constitute an abuse of the writ in light of Williams's now clarified assertion that he did not authorize the first habeas petition. This is a critical question of fact, for Williams should not be allowed to accept Vaught's representation and then later disavow it. Conversely, he should not be bound by what Vaught did unless somehow he authorized or ratified Vaught's efforts on his behalf. A petitioner must be charged with the knowledge his competent attorney possessed at the time of filing the first habeas petition. *Jones*, 722 F.2d at 167. Given the "elemental role of counsel in our adversary system," *id.*, a petitioner who knows that his trial attorney is filing a habeas petition on his behalf cannot later claim personal ignorance in an attempt to justify the omission of claims that he seeks to assert in a new petition. In *Jones*, unlike the present case, there was no contention that the attorney acted without authorization in filing the first petition. For the reasons we already have mentioned, the District Court must determine the factual question whether Williams either expressly or impliedly authorized or ratified his trial attorney's efforts in connection with the previous habeas petition. If he did, then his "new" claims may be dismissed as an abuse of the writ. If he

---

law, the attorney's job was to have terminated. For whatever intent, good, bad, or egotistical, the attorney filed the first habea [sic] without consulting the Petitioner, ...

Petitioner ... was not told by this counsel that he would or could be barred from filing a second Petition or the Petitioner would have insisted that everything possibly [sic] be raised then.

Petitioner's Response to Motion to Dismiss, at 2. These statements to the District Court may be read as a concession that Williams was aware of his trial attorney's actions and knew what claims were being raised in the initial habeas petition. We are unsure, however, that that is what Williams intended to say.

9. At oral argument, the state's attorney conceded that Williams's claim that his first petition was filed without his authority is "the troubling point in this case." And the state's attor-

ney further stated that "quite frankly, the record doesn't indicate" whether Williams knew about the first petition.

10. The plurality opinion in *Kuhlmann* stated, "[t]he terms 'successive petition' and 'abuse of the writ' have distinct meanings. A 'successive petition' raises grounds identical to those raised and rejected on the merits on a prior petition. *See Sanders v. United States*, 373 U.S. at 15–17, 83 S.Ct. at 1077–78. Our decision today concerns the circumstances under which district courts properly should entertain the merits of such a petition." 477 U.S. at 444 n. 6, 106 S.Ct. at 2622 n. 6. Therefore the *Kuhlmann* "colorable showing of factual innocence" test is confined to successive petitions, and should not enter into a district court's determination of whether a new application raising grounds for relief not raised and rejected on the merits on a prior petition constitutes an abuse of the writ.

did not, then his "new" claims should be considered on their merits.

## IV.

We affirm the District Court's dismissal of Williams's repetitive claim, reverse its dismissal of his seven "new" claims, and remand the case for further proceedings consistent with this opinion.

LAY, Chief Judge, concurring.

I concur in Judge Bowman's excellent opinion. However, under the circumstances of this case, where counsel acted on his own in filing the first habeas petition in federal district court without consultation or advice from petitioner, the discretionary rule of 9(b)[1] governing successive petitions is simply not germane to our consideration. To invoke such a rule would in my judgment necessarily create procedural callousness and ignore equitable principles relating to habeas corpus.

A petition for writ of habeas corpus is not a game the law affords incarcerated people. It is the sole means to allow one whose very liberty has been deprived to thoroughly challenge both the procedural and substantive process. Because we as a society believe in the fundamental right of liberty of the individual, our system of government recognizes the values in making certain that a fair process has taken place thus preventing innocent people from forfeiting the right most sacred to them. The initial trial and appeal has proven in hundreds of cases not to have been infallible.

It seems to me those courts which feel self-plagued from prisoner writs should be reminded that the fundamental concept that liberty should not be forfeited without due process has deep roots in the Magna Charta. A denial of a fair hearing to a habeas petitioner by procedural bar should be the unusual exception and not the rule. To "abuse" the writ is to attempt to "vex, harass or delay." This is not the case here.

The Supreme Court has recognized that courts should be careful to make certain that a prisoner does not deliberately hold back claims from one petition to assert them in a second, in order to get two hearings. *Sanders*, 373 U.S. at 18, 83 S.Ct. at 1078. *See also Ellis v. Mabry*, 601 F.2d 363, 364–65 (8th Cir.1979). In all due respect I find such a suggestion far from reality. If a prisoner seeks his liberty, human desire dictates that he or she will assert every ground known at the time that will provide a basis for release. To suggest that prisoners might hold back to play procedural games with the court is unrealistic. I have never been aware of such prisoner stratagem in a habeas case. It sounds good in principle as a means of thwarting the undesirability of piecemeal appeals, but it simply does not happen. There is no empirical evidence that it occurs. The presumptive desirability to achieve one's freedom is far too great to "sandbag" the court for procedural fun.

Prisoners may intentionally waive claims that were known and abandoned in initial proceedings. But such a rule is far different than saying prisoners might deliberately hold back claims to sandbag the court and get two hearings. In any event, petitioner Williams can hardly be accused of abusing the writ when counsel failed to consult or advise him at the time the first petition was filed.

---

1. Rule 9(b) of the Rules Governing Section 2254 cases in the United States District Courts.